UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUSTIN STOLL,<br><br>Defendant. | Case No. 1:21-CR-117<br><br>Judge Dlott<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

## INTRODUCTION

Justin Stoll threatened violence against an online commenter who suggested Stoll should be imprisoned if he entered the United States Capitol on January 6, 2021. Although there is no evidence that Stoll did enter the Capitol or engage in acts of violence or destruction that day, Stoll threatened to introduce the commenter to "[his] motherf***ing maker" if the commentator did anything to take Stoll away from his family.

The Guidelines recommend a sentence of between zero and six months' imprisonment. For the reasons below, the government believes that the sentence proposed in the plea agreement—a Guidelines sentence of 24 months' probation, subject to certain mandatory and special conditions—is sufficient, but not greater than necessary, to meet the goals of sentencing in this case.

## BACKGROUND

**A. In January 2021, Stoll traveled to Washington, DC, to attend a rally organized by supporters of then-President Trump.**

As of 2020, Stoll, a self-described "social media influencer," was posting videos on various social media platforms using the moniker "Th3 Real Huckleberry."

In the days leading up to January 6, 2021, Stoll posted several videos in which he stated his intention to go to Washington, DC, to attend a rally being organized by supporters of then-President Trump and asked his followers to support him in that endeavor. In some of those videos, Stoll insinuated that the rally might turn violent. For example, in one video posted to YouTube on December 24, 2020, entitled "[R]aising money for DC," Stoll said, in part: "I am looking for tactical vests, plates, masks – things of that sort." Stoll continued, "I have no problem going into battle."

As another example, on January 4, 2021, Stoll posted a video to YouTube asking his viewers if he should wear a black United States flag during his trip to Washington, DC. Stoll then explained the meaning of the black flag: "[N]o enemy combatants will receive aid. You will get no quarters from me. Basically, if you are an enemy combatant, you will be shot on sight….I know this is the end-all flag. This is the it's-too-late-to-give-a-sh*t flag."

Despite this rhetoric, a review of Stoll's personal phone revealed no evidence suggesting that Stoll was actually planning to engage in violence or that he was coordinating with others to do anything illegal. In fact, Stoll's phone contained messages in which he discussed with others that it would not be appropriate to bring a firearm to the rally.

In early January 2021, Stoll traveled to Washington, DC, and attended the rally. At some point shortly afterwards, many of the attendees, including Stoll, walked toward the United States Capitol, where a joint session of Congress was convened to certify the vote count of the Electoral College of the 2020 Presidential Election. Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building. U.S. Capitol Police were present and attempted to keep the crowd away from the Capitol building and the proceedings underway inside.

At approximately 2:00 p.m., some rioters broke through police barricades and forced their way to the exterior façade of the Capitol. Video evidence, including videos that Stoll took

as he walked, show that Stoll proceeded with other protesters and rioters to the courtyard immediately outside the west side of the Capitol. While he was walking, Stoll filmed what he was seeing for social media and yelled profanities at the police. However, the government's investigation has not revealed evidence that Stoll actually entered the U.S. Capitol, destroyed property, moved barricades (as opposed to walking past barricades that had been moved by others), or participated in any acts of violence.[1] The contents of Stoll's personal cell phone strongly suggest that he did not enter the Capitol.

### B. After he returned to Ohio, Stoll made a threat toward a concerned citizen.

After the riot, Stoll uploaded to social media videos showing much of the conduct described above, including videos showing that he had proceeded past police barricades surrounding the Capitol Building on January 6, 2021.

In response to his videos, Stoll received online comments from other users who asserted that he should be arrested for his conduct, including the following message one user posted on January 7, 2021:

> Cool I'm glad I saved this video lol I hope you really went in the capitol bldg. You'll have 10 years of free room and board waiting for you.

Shortly thereafter, Stoll posted to Clapper, an online social media application, a video in which he showed a screenshot of the online user's comment and then said, with a serious and aggressive demeanor:

> Snitch b**** first thing in the morning. Let's see what the rat f*** has to say, shall we? Cool, I'm glad I saved this video, lol. I hope you really went into the capitol building. You'll have 10 years of free room and board waiting for you. Well, that shows your f******

---

[1] The video does show Stoll briefly touching a large sign that rioters were passing overhead, through the crowd, which rioters eventually thrust toward members of the U.S. Capitol Police who were reinforcing a barricade; however, the video appears to show that Stoll touched the sign only briefly as it passed overheard and did not participate in thrusting it toward the police.

> ignorance because clearly, the capitol building is owned by the people, so again, nothing will happen. Secondly, I never admitted I went into it, did I? Go watch the video again. Daddy's not stupid. [Wink.] Third, if you ever in your f****** existence did something to jeopardize taking me away from my family, you will absolutely meet your maker. You can play that for the D.A. in court; I don't care. If you ever jeopardize me from being with my family, you will absolutely meet your motherf****** maker, and I will be the one to arrange the meeting. So go ahead and play that sh*t, bitch. Keep this video. You might need it one day.

As he admitted in his plea agreement, Stoll posted the above-described video for the purpose of making a threat and knowing that the communication would be viewed as a threat. Although the threat was viewed by others on the internet, the intended recipient never saw it and later informed the government that he/she was not concerned about it.

## APPLICABLE LAW

The Sentencing Guidelines "should be the starting point and the initial benchmark for choosing a defendant's sentence." *United States v. Demma*, 948 F.3d 722, 727 (6th Cir. 2020) (internal quotations omitted). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Then, "the district court must weigh and apply the range of factors outlined in 18 U.S.C. § 3553(a)." *Id.* at 49-50. These include (1) the nature and circumstances of the offense and the history and characteristics of the defendant and (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a). The Court should impose a sentence sufficient but not

4

greater than necessary to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See* 18 U.S.C. § 3553(a).

## ARGUMENT

**A. The PSR correctly calculates the Guidelines.**

    **1. Summary of Guidelines Ranges**

The probation officer correctly calculated the Guidelines in this case, which result in a Guidelines range of 0-6 months' imprisonment and a recommended term of supervised release of between one and three years. (PSR ¶¶ 80, 84.)

The Guidelines recommend a fine of between $1,000 and $9,500. (*Id.* ¶ 90.) And a special assessment of $100 is mandatory. (*Id.* ¶ 89.)

**B. A consideration of the § 3553(a) factors shows that a low-end Guidelines sentence of two years' probation, subject to certain special conditions, is appropriate here.**

January 6, 2021, was a dark day in American history. As other investigations have shown, many individuals went to the U.S. Capitol intending to commit acts of violence and destruction—and many carried out those intentions.

But although Stoll sometimes used aggressive rhetoric in his social media videos, a review of his personal cell phone and a search of his home (among other things) did not reveal evidence that he was coordinating with others to engage in illegal activity on January 6 or that he intended to do anything other than attend a protest and post videos to social media.

Ultimately, Stoll did end up following the large crowd—which included violent rioters—to restricted grounds outside the U.S. Capitol. His presence, and his yelling profanities at the police, likely helped embolden others who chose to commit acts of violence and destruction. And by continuing with the crowd onto restricted grounds, Stoll and others who did the same made it

5

more likely that the Capitol Police would be overwhelmed by the sheer number of protesters and rioters.

But, as noted, the government's investigation has not revealed evidence that Stoll engaged in any acts of violence, destroyed property, possessed a weapon, or entered the U.S. Capitol—and he was not charged with any crime relating to his conduct on January 6. Rather, his charge stems from the decisions he made after returning to Ohio. As described above, shortly after the riot, Stoll made a threat of violence against a concerned citizen who asserted, in effect, that Stoll should be prosecuted if he entered the Capitol on January 6. Although there is no evidence that Stoll did, in fact, enter the Capitol (and the contents of his phone strongly suggest that he did not), Stoll chose to issue a threat of violence to the concerned citizen and, at the same time, to insinuate that he <u>had</u> entered the Capitol.

Although the intended victim never saw it, this threat did still cause harm to the community. The message it sent—at a time when the entire country was on high alert and many were concerned that the country might not see a peaceful transition of power—was that anyone who might investigate the events of January 6, 2021, would face violence from those who had participated in the riot and their allies. And people other than the intended victim saw the threat and found it disturbing—including another citizen who reported the incident to the FBI.

The nature and circumstances of Stoll's threat, particularly given the context in which it arose, merit a serious punishment. But the government believes that, for the reasons given below, a felony conviction that will prohibit Stoll from possessing firearms, together with a Guidelines sentence that will, in effect, amount to approximately three-and-a-half years of court supervision and mental-health counseling, is sufficient, but not greater than necessary, to meet the goals of sentencing in this case.

To begin, Stoll is an avid supporter of the right to bear arms and, prior to this offense, owned firearms. By pleading guilty to a felony, Stoll has accepted that he will never again be permitted to possess a firearm—a collateral consequence that constitutes a more serious punishment for someone like Stoll than for someone who does not care deeply about owning guns.

Second, there are mitigating circumstances in Stoll's history that weigh in favor of a sentence of probation. Stoll reported certain childhood experiences that, for privacy reasons, the government will not describe publicly, but that are summarized in paragraphs 57-59 of the PSR. These negative childhood experiences may have contributed to Stoll's apparent emotional and mental-health issues, including the anger he expressed in his social media videos.

Finally, and perhaps most importantly, Stoll's conduct since his arrest weighs heavily in favor of a sentence of probation. Stoll was cooperative with authorities from the moment of his arrest and promptly acknowledged that the violence and destruction that occurred on January 6 were not justified. He has also expressed remorse for issuing the threat. And Stoll's Pretrial Services Officer has reported being "blown away" by the progress Stoll has made with counseling. Both the Pretrial Services Officer and defense counsel have reported that, since his arrest, Stoll has done a lot of soul searching about the life he wants to live going forward, and he has behaved well on supervision. Additionally, defense counsel reports that Stoll now understands that, leading up to January 6, 2021, he was consuming misleading media, and that this misinformation made him angrier than he would have been otherwise. These facts suggest that Stoll is amenable to rehabilitation and presents a relatively low risk of reoffending.

In light of the foregoing factors, the government believes that a sentence at the low end of the Guidelines—24 months' probation with mental-health counseling, which is in addition to the approximately 18 months he has already spent on pretrial supervision—is sufficient but not

greater than necessary to meet the goals of sentencing in this case. Stoll's conduct was serious, and to promote respect for the law and provide just punishment for the offense he must accept a felony conviction and be prohibited from possessing firearms going forward. The seriousness of a felony conviction will also provide general deterrence for others considering issuing threats online. But, given the mitigating circumstances and the evidence that Stoll presents a low risk of reoffending, the government does not believe that a custodial sentence is necessary here.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court accept the parties' plea agreement and sentence Stoll to a term of probation of 24 months, subject to all mandatory and standard conditions, along with the special conditions of probation that he continue participating in the mental health treatment he has been receiving since his release on January 15, 2021, or other mental health treatment as directed by the probation officer, and that he submit to testing for prohibited substances if required by his probation officer. The government also requests that, in accordance with the plea agreement, the Court impose the mandatory $100 special assessment, impose no fine, and impose no special conditions of probation under U.S.S.G. § 5B1.3(e).

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

*s/Julie D. Garcia*
TIMOTHY S. MANGAN (069287)
JULIE D. GARCIA (CA 288624)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Phone: (513) 684-3711